# GIBSON DUNN

Orin Snyder
Partner
T: +1 212.351.2400
osnyder@gibsondunn.com

July 7, 2026

<u>VIA ECF</u>

The Honorable Edgardo Ramos
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:    *American Federation of Musicians of the United States and Canada v. Warner Music Group Corp. and Universal Music Group, Inc.*, No. 1:26-cv-04760 (S.D.N.Y.)

Pursuant to Section 2(A)(ii) of this Court's Individual Practices, Defendant Universal Music Group, Inc. ("UMG") respectfully requests a pre-motion conference on its anticipated motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

AFM, the union representing recording musicians, filed a single claim against UMG under Section 301 of the Labor Management Relations Act, alleging that UMG breached the Sound Recording Labor Agreement ("SRLA") by licensing sound recordings to Udio, an artificial-intelligence developer, for use in training its generative AI models and generating outputs. Compl. ¶¶ 25, 41, 44. AFM alleges two breaches: that UMG owed session musicians a "new use" payment under Article 21(a), and that UMG failed to give notice of the alleged "new use." *Id.* ¶¶ 43–47, 57–58.

The Court should dismiss the Complaint on the pleadings. Ordinary principles of contract interpretation require that result. AFM alleges the breach of a single provision—Article 21(a) of the SRLA—and claims it required UMG to pay musicians a "new use" fee for licensing their recordings to train a generative AI model and generate outputs. But Article 21(a) does not establish any payment obligation on its own. It cross-references other agreements. When a covered recording is put to a "new use," Article 21(a) points to a separate AFM agreement—one that already governs that new use—and the musicians are paid whatever that other agreement requires. Article 21(a) is a rate-conversion provision, not an open-ended royalty provision. It requires payment only when another AFM agreement already governs—and supplies the negotiated rate for—the new use.

That structure reflects the parties' bargain. They agreed that a new use of an SRLA recording would be compensated only at a negotiated rate—either one set forth in the SRLA itself, SRLA Art. 21(b)–(h), or one supplied by a separate AFM agreement governing the new use, *id.* Art. 21(a). The bargaining table, not this Court, is where the parties decide whether a new use should be compensated and, if so, at what rate. Here, AFM identifies neither source of compensation. It does not invoke any of the specific new-use provisions in Article 21(b) through (h), because none applies, and it identifies no separate AFM agreement governing AI training and output generation, because none exists. Article 21(a)'s cross-reference therefore points to nothing. The provision supplies no payment obligation, no rate, and nothing for the Court to enforce.

# GIBSON DUNN

July 7, 2026
Page 2

AFM asks the Court to read into the SRLA a payment obligation the parties never negotiated.  This is not, in the end, a case about artificial intelligence; it is a breach-of-contract case, and it fails on the terms of the one provision AFM invokes (Article 21(a)).  This Court has repeatedly declined to supply contract terms the parties themselves omitted, and it should decline again here.  Because the SRLA is unambiguous and integral to the Complaint, the claim can be dismissed now, as a matter of law, without the burden of discovery.

***Under ordinary contract principles, the Court decides the meaning of an unambiguous collective bargaining agreement on the pleadings.***  The SRLA is one of several AFM collective bargaining agreements, each governing a different category of recorded performance.  The SRLA sets the rates paid to musicians for commercial sound recordings—albums, digital releases, certain concert DVDs and music videos.  SRLA Arts. 1–2 & Ex. A.  Other AFM agreements set compensation for recordings made for other purposes such as film scoring.  *See id.* Arts. 16, 21(a).  Article 21(a) coordinates those agreements by providing that, when an SRLA recording is later used for a purpose governed by another AFM agreement, the musicians receive the compensation negotiated in that agreement.  It does not create a payment obligation where no AFM agreement governs the challenged use.

Collective bargaining agreements are generally interpreted "according to ordinary principles of contract law," *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015), and where the agreement is unambiguous, its meaning is a question of law for the Court.  A claim for breach of a provision that does not impose the obligation alleged fails at the pleading stage.  *See Mtume v. Sony Music Entm't*, 2020 WL 4895360, at *4 (S.D.N.Y. Aug. 19, 2020) (Ramos, J.) (dismissing breach-of-contract counterclaim where cited provisions did not "impose payment obligations").

***Article 21(a) supplies no payment where no other AFM agreement governs the new use.***  The text of Article 21(a) resolves this case.  For a use "not covered by [the SRLA]," Article 21(a) fixes the payment as "an amount equal to all payments . . . required under the AFM agreement that would then be effective if the recording were originally made for the purpose set forth under that agreement."  SRLA Art. 21(a).  The rate thus comes not from Article 21(a) but from a separate AFM agreement that already governs the new use.  Courts in this District enforce these agreements as written, drawing the Article 21 rate from a separate AFM agreement and refusing to supply obligations the parties did not.  In *American Federation of Musicians of the United States and Canada v. Sony Music Entertainment, Inc.*, the court explained that Article 21(a)'s new-use provision "would seem, in turn, to point to" the separate agreement covering the new medium—there, "[a] different collective bargaining agreement, known as the Basic Theatrical Motion Picture Agreement (MPA)," which existed and governed that use.  2016 WL 3031029, at *1, *4 & n.5 (S.D.N.Y. May 2, 2016).  And in *American Federation of Musicians & Employers' Pension Fund v. Atlantic Recording Corp.*, a court in this District dismissed with prejudice, on the pleadings, a payment claim brought under an agreement modifying the SRLA—holding the agreement "clear and unambiguous" and declining to "add additional terms . . . under the guise of contract interpretation" or to construe it "as . . . Plaintiffs would rewrite it."  203 F. Supp. 3d 301, 308 & n.3, 310 (S.D.N.Y. 2016).  Here, no AFM agreement governs or prices the use of sound recordings in a generative AI model, and AFM does not—and cannot—identify one, unlike the MPA in *Sony*.  Article 21(a)'s cross-reference thus has no referent, and there is no payment the provision requires or that the Court could calculate.  Supplying one would add to the SRLA a material term the parties never agreed to—the very rewriting *Atlantic* forbids.

# GIBSON DUNN

July 7, 2026
Page 3

***The structure of Article 21 confirms that unlisted, unpriced uses are not covered.***  Article 21(a) is a default that yields to the specific subsections that follow.  It applies "[e]xcept as set forth in paragraphs 21(b) through 21(h)"—the subsections in which the parties separately identified and priced the specific new uses they chose to address, each with its own payment mechanics.  The use of sound recordings in a generative AI model appears in none of them, and AFM does not allege otherwise.  Reading Article 21(a) to reach an unlisted, unpriced use would override that specific scheme.  *See Impax Labs., Inc. v. Turing Pharms. AG*, 2017 WL 4357893, at *10 (S.D.N.Y. Sept. 29, 2017) (Ramos, J.) (declining to supply terms "nowhere to be found in the relevant provisions").

***The text is unambiguous, and no extrinsic evidence can manufacture an ambiguity.***  AFM's contrary reading cannot be reconciled with the text and structure of the SRLA.  To prevail, AFM would need the Court to treat Article 21(a) as requiring a freestanding royalty for any non-covered use and to invent a rate the parties never agreed upon.  The text admits only one reading, and the Court may not consider extrinsic evidence to manufacture an ambiguity it does not contain.  *See United States Tr. Co. of N.Y. v. Jenner*, 168 F.3d 630, 632 (2d Cir. 1999) (where a contract is unambiguous, courts must "give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning").

***Any obligation would be too indefinite to enforce.***  The claim fails for an independent reason.  Even if Article 21(a) could be read to reach the use of covered recordings in AI training and output generation—and it cannot—the SRLA supplies no rate, formula, or external benchmark by which any payment could be fixed, rendering the asserted obligation too indefinite to enforce.  Because the parties reserved new-use rates to bargaining and set none for that use, there is nothing for the Court to apply.  *See GEM Advisors, Inc. v. Corporación Sidenor, S.A.*, 667 F. Supp. 2d 308, 326 (S.D.N.Y. 2009) (dismissing where provision "contains no methodology, formula, or external measure by which the Court might objectively determine the compensation to be paid"); *cf. Anthem, Inc. v. Express Scripts, Inc.*, 2022 WL 1558879, at *9 (S.D.N.Y. Mar. 31, 2022) (Ramos, J.) (court may not award expectancy damages "based . . . on the prospective terms of a nonexistent contract" where "the ultimate agreement that would have been reached" is not "reasonably discernable" (citation and quotation marks omitted)).

***AFM's notice claim falls with its payment claim.***  Article 21(a) requires notice only "[i]n order to effect such a 'new use,'" so the duty is a condition of effecting a compensable new use—one for which an AFM agreement exists—not a freestanding obligation, and it falls with AFM's payment theory.  *Cf. AmTrust N. Am., Inc. v. Signify Ins. Ltd.*, 2019 WL 3034891, at *9 (S.D.N.Y. July 11, 2019) (Ramos, J.) (payment duties "never arose" where a contractual condition was not met).

This dispute can and should be resolved now, on the pleadings.  UMG respectfully requests a pre-motion conference and a stay of discovery pending resolution of the motion.  We thank the Court for its consideration.

**GIBSON DUNN**

July 7, 2026
Page 4

Respectfully,

Orin Snyder

cc:      All counsel of record (via ECF)