# Proskauer

Proskauer Rose LLP   11 Times Square   New York, NY 10036

July 10, 2026

David A. Munkittrick
Partner

d +1.212.969.3226
f 212.969.2900
dmunkittrick@proskauer.com
www.proskauer.com

**_VIA ECF_**

The Honorable Edgardo Ramos
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> Re:   *American Federation of Musicians of the United States and Canada v. Warner Music Group Corp. and Universal Music Group, Inc.*,
> No. 1:26-cv-04760 (S.D.N.Y.)

Dear Judge Ramos:

Warner Music Group Corp. ("Warner") respectfully requests a pre-motion conference on its anticipated motion to dismiss the Complaint.[1]

The American Federation of Musicians ("AFM") alleges a breach of the Sound Recording Labor Agreement ("SRLA") and seeks a portion of revenues flowing from licenses with music AI platforms Suno and Udio.[2]  But Warner Music Group Corp. is not a signatory to the SRLA, does not itself own copyrights, was not a plaintiff in the copyright infringement lawsuits against Suno and Udio, and thus does not have licenses with Suno or Udio.  To the extent AFM seeks to assert a breach of contract, it is not against Warner Music Group Corp.  That is alone enough to dismiss the complaint as to Warner.  But the Complaint fails on the merits as well.

The current SRLA was executed in March 2023.  At the time, our generative AI era had just begun with the emergence of ChatGPT.  But music-focused platforms like Suno and Udio did not exist, and consequently, neither the SRLA nor any AFM agreement contemplates compensation related to the licensing or other use of content for training AI models.  AFM does not dispute this.  Indeed, it is, at this very moment, in negotiations with the record labels regarding the next iteration of the SRLA, and AI is the focus.[3]

---

[1] Unless otherwise noted, all emphasis added, internal citations and quotation marks omitted, and capitalizations and punctuation conformed.

[2] The SRLA is the collective bargaining agreement between AFM and various record labels.  It governs the terms and conditions of employment for musicians who perform on sound recordings.  It is available at https://www.afm.org/wp-content/uploads/2025/03/agmt-srla-2017.pdf.  There are two Warner labels identified as signatories: Warner Brothers Records and Atlantic Recording Corp.  Warner Music Group Corp. is a holding company, not a record label.

[3] *See, e.g.*, https://www.local802afm.org/allegro/articles/srla-rally-march-2026/ ("'If A.I. learns, we should earn!' That was the battle cry … as the AFM began the latest round of negotiations for … the Sound Recording Labor Agreement.") (Apr. 2026); https://www.afm.org/2026/03/afm-rally-for-ai-protections-fair-pay/ (listing one of the AFM's "two priorities for these negotiations [as] Securing 'Consent, Compensation, and Credit' regarding the use of musicians' work in machine learning and generative AI.") (Mar. 6, 2026); https://internationalmusician.org/coalition-

AFM filed this lawsuit in an improper attempt to place a judicial thumb on the negotiation scales, asking this Court to impose contractual terms that only collective bargaining can create. It seeks a portion of alleged license fees paid by Suno and Udio, though neither the SRLA nor any AFM agreement provides for such payments or sets any rate for them.[4]  Instead, AFM asks this Court to create new contractual obligations out of whole cloth. The Court should decline the invitation.[5]

**The SRLA Does Not Cover AI Licenses.**  As AFM admits, "Use of sound recordings in generative AI software models is not a purpose covered by the SRLA." Cmplt. ¶ 43. While the SRLA contains payment provisions for certain other uses of sound recordings, such as in video games, internet sync licensing, and mobile applications, the SRLA is silent as to AI licensing.

AFM therefore invokes Article 21 of the SRLA, titled "Use of a Phonograph Record … in Other Mediums." Generally, Article 21 indicates how payment is handled when a sound recording is put to some use beyond the original purpose for a recording. It provides: "for a purpose not covered by this Agreement, the Company shall pay … an amount equal to all payments … that would be required under the AFM agreement that would then be effective if the recording were originally made for the purpose set forth under that agreement." Cmplt. ¶ 34. As the AFM's website describes it, "generally, a musician on the original recording should be paid as if they were called to a recording session to create content in the new medium."[6]  "That payment would be the applicable wages owed under the agreement that covers the new medium."[7]  And therein lies the rub for AFM. Article 21 merely points to other agreements; it does not itself confer legal rights. Where no agreement exists covering the new medium—as AFM concedes is the case here—Article 21 has nothing to point to, and there is no entitlement to payment.

AFM thus fails to allege any of the elements of a contract claim. There is no agreement covering AI licenses; there thus can be no performance, breach, or resulting damage.[8]

**AFM is Uninjured and Lacks Standing.**  To satisfy Article III standing, AFM must plead injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Here, because no contract entitles AFM members to any portion of AI licensing revenues, neither AFM nor its members have been injured. They have not been deprived

---

and-contracts-afm-works-to-combat-ai-and-protect-musicians/ ("One centerpiece of the SRLA negotiations will be consent, compensation, and credit for the use of musicians' tracks in machine learning.") (Dec. 1, 2025).

[4]  The SRLA does not contain a grievance and arbitration procedure. Thus, this contractual interpretation matter is brought to the Court pursuant to 29 U.S.C. § 185.

[5]  Additionally, it is notable that all of the material allegations against Warner are "upon information and belief." But a "litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018).

[6] https://www.afm.org/recording-and-digital-media/new-use-agreements/.

[7] https://www.afm.org/recording-and-digital-media/srla-licensing-provisions/.

[8] To the extent AFM is seeking a portion of the settlement recovery arising from infringement claims against Udio and Suno, the claim fails for the same reasons. No provision of the SRLA or any AFM agreement entitles AFM members to a portion of litigation settlement proceeds.

of anything.  Their right to negotiate to attempt to receive such payments in the future remains intact.  But without a contractual right to payment, there can be no injury.[9]

The Complaint confirms this.  It never alleges that any identified musician is owed any specific sum.  It alleges only prospective, hypothetical revenue streams—that Defendants "will earn further revenue on an ongoing basis."  Cmplt. ¶ 3.  This is the subject of ongoing collective bargaining, not any presently owed obligation.

***AFM's Claim Intrudes on Ongoing Collective Bargaining.***  AFM's claim depends on a contractual right and rate that do not exist.  AFM's claim for relief would require the Court to set rates and terms the AFM is currently seeking at the parties' bargaining table.  That would improperly intrude on the collective bargaining process.  *E.g.*, *Cath. High Sch. Ass'n of Archdiocese of N.Y. v. Culvert*, 753 F.2d 1161, 1167 (2d Cir. 1985) ("The government cannot compel the parties to agree on specific terms."); *Bartenders & Culinary Workers Union, Loc. 340 v. Howard Johnson Co.*, 535 F.2d 1160, 1162 (9th Cir. 1976) ("Courts and secondary authorities alike are virtually unanimous in the view that a court may not impose the substantive provisions of a collective bargaining contract…."); *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1336 (S.D.N.Y. 1982) ("While the power of the Court to fashion in appropriate cases an equitable remedy is great, it does not encompass the right to make an agreement for the parties."); *see also, e.g.*, *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) ("Enforced sharing also requires…courts to act as central planners, identifying the proper price, quantity, and other terms of dealing—a role for which they are ill suited.").

***AFM's Notice Claim Fails.***  AFM also claims breach for failure to provide notice of Udio and Suno licenses.  But Article 21's notice duty arises only "in order to effect such a 'new use'" compensable under a separate AFM agreement that supplies a rate.  It is not a freestanding disclosure mandate of any activity whatsoever.  Reading it otherwise would produce absurd results, obligating notification of every licensing arrangement, covered or not.  Because there is no AFM agreement applicable to AI licenses, AFM's notice claim fails.

For all these reasons, Warner respectfully requests a pre-motion conference.  Warner further requests a stay of discovery pending resolution of its motion.  A stay is warranted under the three-factor test applied in this District, *see Hong Leong Financial Ltd. (Sing.) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013):  the motion presents substantial threshold defects; the discovery AFM will pursue—touching sensitive AI licensing negotiations and terms— would be broad and burdensome; and AFM will suffer no prejudice.

We thank the Court for its consideration.

Respectfully submitted,

*/s/ David A. Munkittrick*

David A. Munkittrick

---

[9] AFM members are not copyright holders in the sound recordings, so their right to payment, if any, is purely contractual.