

**Eyad Asad**
**Partner**
o  212.356.0249
c  718.496.0249
f  646.473.8249
easad@cwsny.com
www.cwsny.com

909 Third Avenue, 12th Floor • New York, NY 10022-4731

July 17, 2026

**By ECF**
The Honorable Edgardo Ramos
United States District Court, Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Re:    *American Federation of Musicians of the United States and Canada v. Warner Music Group Corp. and Universal Music Group, Inc.*, **Case 1:26-cv-04760**

Dear Judge Ramos:

This firm represents Plaintiff American Federation of Musicians of the United States and Canada (the "AFM") and responds to the July 7, 2026 letter filed by Defendant Universal Music Group, Inc. ("UMG") requesting a pre-motion conference on its anticipated motion to dismiss.

The AFM brought this action under Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185, alleging that UMG breached the Sound Recording Labor Agreement (the "SRLA"), a collective bargaining agreement ("CBA") between the AFM and recording companies, including Defendants—by licensing sound recordings to artificial intelligence ("AI") companies without notifying the AFM or compensating the musicians who performed on them.

In deciding a motion to dismiss, a court must accept as true all well-pleaded facts and ask only whether the complaint states "a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When courts interpret CBAs, traditional rules of contract interpretation apply as long as they are consistent with federal labor policies." *Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp., Pratt & Whitney*, 230 F.3d 569, 576 (2d Cir. 2000).

**Background**. This case stems from Defendants' agreements licensing Covered Recordings to AI companies to train their models and generate AI music from user prompts. The AFM alleges that this licensing is a "new use" under Article 21(a) of the SRLA, triggering notice and payment obligations that Defendants have breached.

Article 21 has been in the CBA since 1999, replacing a prior prohibition on "dubbing," or the re-use of recordings. It opened the door to reusing recordings for purposes not known at the time, but the bargain struck was that the companies would have to compensate musicians for that re-use. UMG's reading would swallow the bargain, letting companies profit from licensing recordings to AI companies while avoiding payment to musicians.

15038179.3
15038179.3



July 14, 2026
Page 2

**Article 21(a) is subject to multiple interpretations**. Article 21(a) provides that if a company uses a Covered Recording "for a purpose not covered by [the SRLA], the Company shall pay to those musicians who rendered services in the recording . . . an amount equal to all payments . . . that would be required under the AFM agreement that would then be effective if the recording were originally made for the purpose set forth under that agreement." Because the provision is ambiguous and susceptible to more than a single interpretation, dismissal is inappropriate. Discovery into "extrinsic factors, such as bargaining history, past practices, and other provisions in the CBA," *United Techs. Corp.*, 230 F.3d at 576, is needed to properly interpret it.

*First*, Article 21(a) imposes an independent, mandatory payment obligation – the Company "*shall pay*" – with the reference to other AFM agreements serving only to calculate what, not *if*, a company must pay. It applies to all new uses, not simply those with a rate already established in another AFM agreement, as UMG contends; given how quickly technology reshapes, a contrary reading be nonsensical. Past practice confirms this: For example, when companies first licensed music for video games, no AFM agreement had set a rate for that use, yet the parties treated it as a new use for both notification and payment purposes.

UMG conflates the measurement of payments owed with the obligation to pay. As the court explained in another AFM case UMG cites, "AFM is surely correct that 'the absence of any provision for calculating damages [in the SRLA] does not mean there can be no damages'" because the parties need not specify damages in advance. *AFM v. Sony Music Entertainment, Inc.*, No. 15CV05249GBDBCM, 2016 WL 3031029, at *3 (S.D.N.Y. May 2, 2016) ("failure to fix a sum certain, . . . is not necessarily fatal to a contract."). UMG's alternative reliance on *GEM Advisors, Inc. v. Corporación Sidenor, S.A.*, 667 F. Supp. 2d 308, 326 (S.D.N.Y. 2009) (Ramos, J.), fails for the same reason: unlike the SRLA, the contract there expressly left the payment amount to be mutually agreed upon later.

UMG's contention that Article 21(a) is a 'default that yields to' subsections 21(b)-(h), such that an unlisted use like AI licensing fall outside of Article 21 altogether, misconstrues the provision's structure. The introductory clause – "[e]xcept as set forth in paragraphs 21(b) through 21(h) below" – establishes that (b)-(h) carve out specific uses to which specified rates are paid; it does not follow that any use *not* listed in (b)-(h) falls outside Article 21 entirely. *Impax Laboratories, Inc. v. Turing Pharmaceuticals AG*, 16 Civ. 3241, 2017 WL 4357893, at *8 (Sept. 28, 2017) (Ramos, J.), on which UMG relies, does not support narrowing Article 21(a) this way. There, the court refused to import restrictive terms into a provision where those limiting words were "simply nowhere to be found," while noting that a contract "should be construed so as to give full meaning and effect to all of its provisions." That same principle defeats UMG's position, which would strip Article 21(a) of any meaning whatsoever.

*Second*, even if Article 21(a) requires that there is an AFM agreement that sets the rate for the new use, it leaves room for interpretation as to which agreement applies. Without knowing what limits, if any, Defendants placed on the AI companies' use of the recordings, it is impossible to ascertain whether those companies will use them for purposes the SRLA or other AFM agreements already cover. As alleged in the Complaint, Udio.com ("Udio") allows user-created,



July 14, 2026
Page 3

AI-generated tracks to be marketed on streaming platforms like Spotify. Compl. ¶21 & n.10. Since the SRLA sets rates for streaming, an AI recording on a streaming platform would be covered. Other likely AI uses—video games, sampling, commercials—are similarly subject to express SRLA rates.

UMG's cited authorities holding that a breach-of-contract claim fails where the cited provision imposes no obligation on the defendant are distinguishable. In *American Federation of Musicians & Employers' Pension Fund v. Atlantic Recording Corp.*, 203 F. Supp. 3d 301, 308 & n.3, 310 (S.D.N.Y. 2016), the parties' agreement "expressly," "clear[ly] and unambiguous[ly]" disclaimed the payment obligation the AFM's pension fund sought to enforce—unlike Article 21(a) here. Furthermore, the *Sony Music* court's statement that Article 21 "would seem" to point to another AFM agreement, 2016 WL 3031029, at *2 n.5, merely describes one unremarkable new-use example; it does not hold that Article 21 applies only where another AFM agreement sets a rate. And *Mtume v. Sony Music Entertainment*, No. 18 CIV. 6037(ER), 2020 WL 4895360, at *4 (S.D.N.Y. Aug. 19, 2020), rejected a counterclaim because the cited provisions imposed obligations on the counterclaimant itself, not the other plaintiff—not because damages were unmeasurable. Here, by contrast, AFM has identified a provision, Article 21(a), that applies directly to UMG.

**UMG must notify the AFM of its licensing agreements.** Article 21(a) also provides that "[i]n order to effect such a 'new use,'" companies must provide notice and specified information to the AFM regarding their licensing arrangements. That information is needed not only for policing compliance with the SRLA, but also to establish rates of pay and benefits owed to musicians..

**Discovery should proceed despite UMG's motion.** "[A] stay of discovery is the exception and not the rule in this District," and turns on the strength of the underlying motion. *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, No. 25-CV-01260 (JAV), 2025 WL 1616872, at *1-2 (S.D.N.Y. June 6, 2025). Because the issues underlying the motion here are in "sharp dispute," *id*. at *1, and UMG cannot show any burden,—discovery should proceed.

For these reasons, and as the AFM will further develop in opposition briefing, this case should not be dismissed, and discovery should proceed while a motion to dismiss is pending. Thank you for your consideration.

Respectfully submitted,

*Eyad Asad*

Eyad Asad

EA:

cc: All counsel of record (by ECF)