**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, <br><br> Plaintiff, <br><br> v. <br><br> WARNER RECORDS, INC., ATLANTIC RECORDING CORP., and UNIVERSAL MUSIC GROUP, INC., <br><br> Defendants. | Case No. 1:26-cv-04760 <br><br><br> **FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiff American Federation of Musicians of the United States and Canada (the "AFM"), by its attorneys, Cohen, Weiss and Simon LLP, for its complaint against Defendants Warner Records, Inc., Atlantic Recording Corp. (together with Warner Records, Inc., "Warner") and Universal Music Group, Inc. ("Universal") alleges as follows:

**INTRODUCTION**

1. The AFM brings this lawsuit because Defendants, among the largest music companies in the world, have licensed sound recordings on which AFM-represented musicians have worked, without compensation or credit, to two Artificial Intelligence ("AI") companies. At the same time, they have refused to provide information to the AFM about which recordings and whose work is being licensed. Defendants' failure to compensate the musicians and provide information violates their collective bargaining agreement with the AFM.

2. In lawsuits Defendants filed in June 2024 against those two AI companies, alleging copyright violations for unauthorized and uncompensated use of sound recordings, Defendants asserted that the AI companies were "replacing the work of human artists with massive

1

quantities of AI created sounds . . . that substantially dilute the royalty pools paid out to artists."[1]

3. Now, following settlements reached with the AI companies in late-2025, Defendants are allowing those same AI companies to use the work of AFM-represented musicians to do exactly what they warned about: Training AI models to generate supposedly "new" sound recordings derived from music ingested into their models. On information and belief, under the settlements, Defendants received significant compensation from the AI companies for past copyright violations, licensed substantial portions of their music catalogs to the AI companies to train their models on both a retroactive and prospective basis, and will earn further revenue on an ongoing basis from the AI companies.

4. While the Defendants protected their own interests and created a significant source of new revenue with the retrospective settlements and prospective licenses, they have refused to compensate the musicians whose work – created with their own instruments and through their talent, creativity, and hard work – is fed into AI machines for profit.

5. The music industry is no stranger to change due to technological innovation. Over time, vinyl records, cassette tapes, and CDs gave way to internet-based players, peer-to-peer file sharing services, and streaming services like Spotify, where music can be played on smartphones, watches, or glasses.

6. The AFM has aggressively fought to ensure that musicians receive compensation and credit for the sound recordings on which they have worked as new technologies have emerged and recordings are used in new and unexpected ways. To account for such

---

[1] *See* Complaint ("*Suno* Compl.") ¶79, *UMG Recordings Inc., et al. v. Suno, Inc., et al.*, Case 24-cv-11611-FDS, (D. Mass. June 24, 2024); Amended Complaint ("*Udio* Compl.") ¶96, *UMG Recordings Inc., et al. v. Uncharted Labs, Inc. d/b/a Udio.com*, Case 24-cv-04777-AKH (S.D.N.Y. Oct. 6, 2025).

possibilities, the AFM's collective bargaining agreement, known as the Sound Recording Labor Agreement (the "SRLA"), contains a "new use" provision that requires music companies to notify the AFM of licenses and other transfers of rights in music that is to be used for purposes not covered by the SRLA and to compensate the individual musicians who worked on those recordings. The AFM's agreements with music companies have had new use provisions in one form or another dating back to as early as the 1940's.

7. Today, generative AI tools constitute such a new use, one that looms over musicians' livelihoods. In the words of the Defendants, AI is "poised to push the boundaries and expand commercial opportunities" in the music industry while also creating "enormous potential for abuse."[2] New generative AI tools like Suno's and Udio's "will be able to assist humans in creating and producing new and innovative music . . . [b]ut if developed irresponsibly . . . those same tools threaten enduring and irreparable harm to recording artists, record labels, and [the] music industry . . . ."[3]

8. Despite the SRLA's new use provision and despite Defendants' acknowledgment of the threat that generative AI poses to recording artists, Defendants have failed to compensate musicians whose music has already been "scraped,"[4] "ingested"[5] and copied, exploited, and incorporated into the development of Suno's and Udio's AI models under Defendants' settlement agreements with them. Defendants have moreover not even provided basic information required under the SRLA to the AFM about which recordings were licensed. The

---

[2] *Suno* Compl. ¶1; *Udio* Compl. ¶1.

[3] *Suno* Compl. ¶3; *Udio* Compl. ¶3.

[4] *Udio* Compl. ¶43(c).

[5] *Suno* Compl. ¶9; *Udio* Compl. ¶9.

AFM therefore files this lawsuit based on Defendants' breach of the SRLA.

## THE PARTIES

9. The AFM is a labor organization and employee representative within the meaning of Section 2(5) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 152(5).

10. The AFM is the largest organization in the world representing musicians and, together with its affiliated local unions, represents tens of thousands of professional musicians throughout North America in all sectors of the music industry, including musicians involved in making sound recordings. At all times relevant to this action, the AFM has served as the exclusive collective bargaining representative for certain musicians signed to or otherwise employed by Universal and Warner. The AFM maintains its principal place of business at 1501 Broadway, New York, NY 10036.

11. Defendant Universal is a Delaware corporation that transacts business in New York. On information and belief, Universal is the largest recording company and distributor of music in the world. Universal is an employer within the meaning of Section 2(2) of the NLRA, 29 U.S.C. §152(2), and has a principal place of business located at 2220 Colorado Avenue, Santa Monica, California 90404. Universal also maintains offices at 755 Broadway, New York, New York, 10019. Universal owns or exercises exclusive control over the copyrights in sound recordings within its catalog embodying the performances of musicians represented by AFM.

12. For all relevant times, Universal has been a signatory to and bound to the SRLA.

13. Defendant Warner Records, Inc. is a Delaware corporation that transacts business in New York. Warner Records, Inc. is an employer within the meaning of Section 2(2) of the NLRA, 29 U.S.C. §152(2), and has a principal place of business located at 1633 Broadway,

New York, New York 10019. Warner Records, Inc. owns or exercises exclusive control over the copyrights in sound recordings within its catalog embodying the performances of musicians represented by AFM.

14.     For all relevant times, Warner Records, Inc. has been a signatory to and bound to the SRLA.

15.     Defendant Atlantic Recording Corp. is a Delaware corporation that transacts business in New York. Atlantic Recording Corp. is an employer within the meaning of Section 2(2) of the NLRA, 29 U.S.C. §152(2), and has a principal place of business located at 1633 Broadway, New York, New York 10019. Atlantic Recording Corp. owns or exercises exclusive control over the copyrights in sound recordings within its catalog, embodying the performances of musicians represented by AFM.

16.     For all relevant times, Atlantic Recording Corp. has been a signatory to and bound to the SRLA.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and 28 U.S.C. § 1331.

18.     Venue lies in this judicial district under Section 301(c) of the Labor Management Relations Act, 29 U.S.C. § 185(c), because Defendants transact business in New York and the AFM maintains a principal place of business in this judicial district and its officers and agents represent and act for employee members in this judicial district.

## FACTUAL ALLEGATIONS

*Defendants' lawsuits against Suno and Udio*

19.     On June 24, 2024, Universal, Warner, and other record companies filed copyright infringement actions against Udio and Suno. The complaints allege that Udio and Suno

scraped, copied, and ingested vast quantities of copyrighted sound recordings without authorization for use in training generative artificial intelligence models. As used herein, "scraping" refers to the use of automated software tools, such as internet crawlers, bots, or other automated programs, to systematically gather and copy large amounts of information from the internet. Unlike a human listener who experiences music one recording at a time, scraping software can collect and process millions of recordings at machine speed for later analysis, training, and commercial exploitation. According to the complaints, Udio and Suno used the resulting datasets to train generative AI models capable of producing new digital music files in response to user prompts. The complaints further allege that those models generate outputs that emulate the sound, performance characteristics, expressive qualities, and commercial appeal of human-created sound recordings while competing in the same marketplace for listeners, licensing opportunities, and creative attention.

20.    As an example of how the trained AI models work, Defendants alleged that a user prompt for "1950s rock and roll, rhythm and blues, 12 bar blues, rockabilly, energetic male vocalist, singer guitarist" generated 29 different audio outputs evoking the sound, feel, and musical characteristics of Chuck Berry's performance of "Johnny B. Goode."[6]

21.    Defendants' lawsuits describe other prompts in both Suno and Udio that render AI-generated outputs that resemble other famous songs: For example, "Rock Around the Clock" by Bill Haley & His Comets, "I Got You (I Feel Good)" by James Brown, "Great Balls of Fire" by Jerry Lee Lewis,[7] "Billie Jean" by Michael Jackson, and "I Get Around" by the Beach

---

[6] *Suno* Compl. ¶54.

[7] *Suno* Compl. ¶¶56-59.

Boys,[8] among many others.

22.    The functionality reportedly offered through Udio's "Starstruck" platform[9] further demonstrates that these licenses involve a new commercial exploitation of musicians' performances. Rather than merely distributing existing sound recordings, the platform reportedly permits users to generate "Cover," "Reimagine," "Remix," and "Create" outputs derived from specific artists, songs, recordings, voices, styles, and performances. Users are reportedly required to select a particular artist and recording before generating outputs, and the resulting recordings are reportedly owned by the participating rights holders rather than the user. On information and belief, the use of the musicians' performances embodied in the underlying sound recordings to generate new revenue streams and commercial products goes beyond the uses contemplated when such performances were originally rendered and recorded.

23.    Udio's platform even allows users to market AI-generated audio recordings on streaming platforms like Spotify.[10]

24.    Defendants claimed that AI generated recordings made possible by Suno and Udio permit the creation of digital music files at such speed and volume that they risk "overrunning the market for human-made sound recordings."[11] Indeed, recent disclosures by the

---

[8] *Udio* Compl. ¶¶70-71.

[9] Murray Stassen, *Udio's licensed AI music app will be called Starstruck, with four creation modes for fans (Report)*, Music Business Worldwide (May 25, 2026), https://www.musicbusinessworldwide.com/udios-licensed-ai-music-app-will-be-called-starstruck-with-four-creation-modes-for-fans-report/ (reporting that the platform includes "Cover," "Reimagine," "Remix," and "Create" functionalities for opted-in artists and songwriters).

[10] *Udio* Compl. ¶88.

[11] *Suno* Compl. ¶78.

streaming music platform Deezer state that Deezer "is now receiving almost 75,000 AI-generated tracks per day, representing roughly 44% of the daily uploads."[12]

25.    According to Defendants' complaints against Suno and Udio, both AI companies monetized the music stolen from recording artists and companies through subscription services.[13]

26.    On information and belief, in or around late-2025, both Universal and Warner reached a settlement agreement with Udio, and Warner also settled its claims against Suno.

27.    On information and belief, and based on media reports and statements released to the press by Universal and Warner,[14] the Udio and Suno settlements include a compensatory element intended to resolve claims arising from the unauthorized copying and use of copyrighted sound recordings in training generative AI models that now have been licensed and authorized by Universal and Warner.[15]

28.    On information and belief. the settlements also contemplate the

---

[12] Deezer, *AI-Generated Tracks Represent 44% of New Uploaded Music* (Apr. 20, 2026), https://newsroom-deezer.com/2026/04/ai-generated-tracks-represent-44-of-new-uploaded-music/ (reporting that Deezer receives "almost 75,000 AI-generated tracks per day, representing roughly 44% of the daily uploads").

[13] *Suno* Compl. ¶13; *Udio* Compl. ¶13.

[14] *See e.g.,* Universal Music Group, *Universal Music Group and Udio announce Udio's first strategic agreements for new licensed AI music creation platform* (Oct. 29, 2025), https://www.universalmusic.com/universal-music-group-and-udio-announce-udios-first-strategic-agreements-for-new-licensed-ai-music-creation-platform/; Warner Music Group, *Warner Music Group and Udio collaborate to build a new licensed music creation service* (Nov. 19, 2025), https://www.wmg.com/news/warner-music-group-and-udio-collaborate-to-build-a-new-licensed-music-creation-service; Jaspreet Singh, *Warner Music Group, Udio settle copyright case, plan new AI song creation platform*, Reuters (Nov. 19, 2025), https://www.reuters.com/legal/litigation/warner-music-settles-with-ai-firm-udio-plans-joint-platform-2025-11-19/.

[15] *Id.*

development and launch of AI music platforms based on licensed catalogs and authorized recordings.

29.    As publicly described, these arrangements appear to permit Udio and Suno to continue developing future generations of AI systems using models, datasets, technologies, and training infrastructure that were originally built through the ingestion of copyrighted sound recordings.

30.    On information and belief, , the settlements thus are not limited to compensation for past conduct; they also establish a framework under which AI models and derivative iterations of those models may continue to be refined, commercialized, and deployed using recordings that have subsequently been licensed and authorized by Universal and Warner.

31.    In practical effect, the settlements contemplate the ongoing exploitation of trained models and successor systems for purposes far beyond the original consumption of the recordings, a use that is quintessentially a "new use" of the copyrighted works and performances embodied therein.

32.    On information and belief, thousands of sound recordings covered by Warner's settlements or licensing arrangements with Udio and Suno, and by Universal's settlement or licensing arrangement with Udio and any future Universal arrangement with Suno or similar AI music services, are subject to the terms of the SRLA.[16]

33.    Universal has touted the settlements as proof of its "commitment to do

---

[16] *See, e.g.,* Memorandum of Law in Support of Plaintiffs' Motion for Leave to File a Second Amended Complaint at 2, *UMG Recordings, Inc. v. Suno, Inc.*, No. 1:24-cv-11611-FDS (D. Mass. May 21, 2026) (stating that plaintiffs' initial complaint asserted 560 sound recordings and that, through discovery, plaintiffs learned Suno used "millions" of plaintiffs' copyrighted sound recordings and sought to add "61,026 works" to the case).

what's right by our artists and songwriters,"[17] while Warner states that its "landmark pact with Suno is a victory for the creative community that benefits everyone."[18] Defendants have failed to share in the settlement proceeds and future revenue with those same artists whose music was copied, used for training, and incorporated into the development of the AI models and platforms now being commercially exploited as a new use of the performances embodied in those recordings, despite their self-congratulatory claims of protecting those same artists.

34.    On information and belief, sound recordings copied by Suno and Udio prior to their settlements with Defendants were used to train their AI models, and the resulting trained models, together with successor systems derived from those models, continue to be refined, deployed, and commercially exploited for purposes far beyond the original consumption of the recordings.

Article 21 of the SRLA Mandates Notice to the AFM of New Uses
for Sound Recordings and Compensation to Musicians for Those New Uses

35.    Pursuant to Article 2 of the SRLA, the SRLA covers AFM members performing services as employees of signatory companies "as instrumental musicians or as leaders, contractors, copyists, orchestrators and arrangers of instrumental music . . . in the recording of phonograph records[19] or Covered Concert DVDs . . . and side musicians engaged in 'on-camera sideline' work . . . and to any other person employed as a Musician in the recording of phonograph

---

[17] Universal Music Group, *supra* note 14.

[18] Warner Music Group, *Warner Music Group and Suno forge groundbreaking partnership* (Nov. 25, 2025), https://investors.wmg.com/news-events/news-releases/news-details/2025/WARNER-MUSIC-GROUP-AND-SUNO-FORGE-GROUNDBREAKING-PARTNERSHIP/default.aspx.

[19] Article 1 of the SRLA 1 defines "phonograph record" and "record" as "any phonograph record, digital audio file, compact disc, tape recording or any other device reproducing sound, whether now in existence or which may come into existence."

records . . . within the United States or Canada." Pursuant to Article 10, signatory employers recognize the AFM as the exclusive bargaining representative of the musicians covered by the SRLA.

36.    Article 21 of the SRLA sets forth terms for the "new use" of sound recordings. Article 21(a) states, in part:

> Except as set forth in paragraphs 21(b) through 21(h) below, if the Company uses a phonograph record or Traditional Music Video produced under any Sound Recording Labor Agreement since January 1954 or a Covered Concert DVD produced since February 1, 2007 for a purpose not covered by this Agreement, the Company shall pay to those musicians who rendered services in the recording of the phonograph record, Traditional Music Video or Covered Concert DVD an amount equal to all payments (including, without limitation, pension contributions, but excluding health and welfare contributions) that would be required under the AFM agreement that would then be effective if the recording were originally made for the purpose set forth under that agreement.

37.    Paragraphs 21(b) through 21(h) referenced in the foregoing paragraph define a company's new use payment obligation in certain circumstances (e.g., for use in video games) as a percentage of its licensing revenue rather than "all payments that would be required under the AFM agreement that would then be effective if the recording were originally made for the purpose set forth under that agreement."

38.    Thus, under Article 21(a), a signatory employer that uses a sound recording "for a purpose not covered by the [SRLA]" is required to compensate the musicians who "rendered services" in a recording that is used in the new use.

39.    Article 21(a) also requires employers to notify the AFM of, among other things, the identity of the records involved in a new use and the intended use of the recordings, and to provide that information in the form set forth in Exhibit F of the SRLA.

40.    Exhibit F of the SRLA requires employers to identify any new use of a

11

recording; any sale, lease, transfer or other permission to use a recording and the date thereof; the names of the artists on the recording that is put to a new use or licensed or otherwise transferred; the date of the recording; the intended use of the recording; and the identity and contact information of any licensee or transferee.

Universal and Warner Breached Article 21 of the SRLA

41.     On information and belief, the settlements reached by Universal and Warner in their lawsuits against Suno and Udio included licensing agreements permitting the use of copyrighted recordings to train their AI models and to generate recordings as outputs in response to user prompts or other inputs.

42.     On information and belief, under the settlements, Universal and Warner were compensated by Udio and Suno for past copyright infringement, as well as for licensing their sound recordings.

43.     On information and belief, pursuant to the settlements, Universal and Udio will also receive additional compensation based on the continuing use of the recordings licensed to Udio and Suno.

44.     On information and belief, the sound recordings licensed by Universal and Warner include performances that were made by AFM-represented musicians under or subject to the SRLA.

45.     Use of sound recordings in generative AI software models is not a purpose covered by the SRLA.

46.     Therefore, Defendants' licensing of sound recordings to Suno and Udio for use in training their AI models and generating outputs constitutes a new use under Article 21(a) of the SRLA.

47.     Both Universal and Warner have failed and refused to provide

12

compensation to musicians for the AI exploitation of recordings on which they worked or performed, in violation of Article 21(a).

48.    To date, neither Universal nor Warner have provided the AFM with the information required under Article 21(a) and Exhibit F of the SRLA relative to the recordings licensed or otherwise transferred to Suno and Udio for use in their platforms.

49.    Specifically, Defendants have not provided the AFM with the names of artists who appeared or worked on recordings that have been licensed to or otherwise obtained by Suno and Udio, have not identified the recordings or their release dates, and have not identified the date of the transfers or licenses to Suno and Udio.

## CAUSE OF ACTION

### 29 U.S.C. § 185
### Breach of a Labor Contract

50.    The AFM repeats and realleges paragraphs 1-49 above as though fully set forth herein.

51.    Defendants are parties to the SRLA, a collective bargaining agreement between employers and the AFM, a labor organization representing employees in an industry affecting commerce.

52.    The SRLA is a binding agreement between each of the Defendants and the AFM.

53.    The SRLA covers services rendered by musicians in making sound recordings.

54.    Defendants have employed musicians represented by AFM in the making of sound recordings pursuant to the terms of the SRLA.

55.    The terms of the SRLA require signatory employers to compensate

musicians for uses of sound recordings for purposes not covered by the SRLA.

56.    The SRLA also requires signatory employers to provide the AFM with names of recordings to be used for purposes not covered by the SRLA, the names of artists involved in those recordings, the original release dates of the recordings, the name of the person or entity to which the recording is licensed, and the date of transfer to the licensee.

57.    The copying and use of sound recordings for the development, training, refinement, deployment, and commercial exploitation of generative artificial intelligence systems, including successor models and derivative technologies, constitutes a new use for sound recordings under the SRLA.

58.    Defendants have licensed a substantial part of their catalogs, including sound recordings made by musicians under the terms of the SRLA, for use by Suno and Udio in their generative AI platforms.

59.    Defendants have failed and refused to compensate musicians for the use of SRLA-covered sound recordings by Suno and Udio, in violation of Article 21 of the SRLA.

60.    Defendants have also failed and refused to provide the AFM with information required under the SRLA regarding the licenses granted to Suno and Udio, also in violation of Article 21 of the SRLA.

61.    As a result of Defendants' breach of contract, AFM and musicians represented by AFM have suffered damages in an amount to be determined at trial.

## JURY DEMAND

62.    Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

63.    WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in its favor and against each of the Defendants and award the following relief:

(a)    Declaring that Defendants have violated the SRLA by failing to compensate musicians for the use of sound recordings in Suno's and Udio's AI platforms;

(b)    Declaring that Defendants have violated the SRLA by failing to provide information required under the SRLA to the AFM regarding the licensing of sound recordings to Suno and Udio;

(c)    Awarding Plaintiff, on behalf of the musicians it represents, monetary damages in an amount to be determined at trial;

(d)    Awarding Plaintiff reasonable attorneys' fees and costs;

(e)    Awarding Plaintiff, on behalf of the musicians it represents, pre-judgment and post-judgment interest to the fullest extent available on any monetary award made part of the judgment; and

(f)    Such other and further relief the Court deems just and proper, in law or in equity.

Dated: July 24, 2026
New York, New York

Respectfully submitted,

/s/ *Eyad Asad*
Eyad Asad
COHEN, WEISS AND SIMON LLP
909 Third Avenue, 12th Floor
New York, NY 10022
(212) 563-4100
easad@cwsny.com

*Attorneys for the Plaintiff*

15

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff American Federation of Musicians of the United States and Canada hereby demands a trial by jury in the above-captioned action of all issues triable by jury.

Dated: July 24, 2026
New York, New York

Respectfully submitted,

/s/ *Eyad Asad*
Eyad Asad
COHEN, WEISS AND SIMON LLP
909 Third Avenue, 12th Floor
New York, NY 10022
(212) 563-4100
easad@cwsny.com

*Attorneys for the Plaintiff*

16