**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA,

Plaintiff,

v.

WARNER RECORDS, INC., ATLANTIC RECORDING CORP., and UNIVERSAL MUSIC GROUP, INC.,

Defendants.

Case No. 1:26-cv-04760

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS WARNER RECORDS INC. AND ATLANTIC RECORDING CORPORATION'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

I. THERE IS NO AFM AGREEMENT THAT APPLIES TO AI USE OF SOUND RECORDINGS. .... 1

II. NOTHING IN THE SRLA CREATES A RIGHT TO PAYMENT FOR AI USE. .... 2

III. THE PARTIES ARE CURRENTLY NEGOTIATING WHETHER AND HOW THE SRLA SHOULD ADDRESS AI USE. .... 3

IV. THERE IS NO REQUIREMENT IN THE SRLA FOR DEFENDANTS TO PROVIDE INFORMATION TO AFM ABOUT USES OUTSIDE OF THE SRLA. .... 5

V. AFM'S ARGUMENTS ARE WITHOUT MERIT. .... 5

VI. THE FAC SHOULD BE DISMISSED WITH PREJUDICE. .... 7

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AFM v. Atl. Recording Corp.*,
203 F. Supp. 3d 301 (S.D.N.Y. 2016)....................2, 3, 7

*Am. Smelting & Refining Co. v. Stettenheim*,
177 A.D. 392 (App. Div. 1917)....................5

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
784 F.2d 1325 (7th Cir. 1986)....................4

*Bartenders & Culinary Workers Union, Local 340 v. Howard Johnson Co.*,
535 F.2d 1160 (9th Cir. 1976)....................4

*Candid Prods., Inc. v. Int'l Skating Union*,
530 F. Supp. 1330 (S.D.N.Y. 1982)....................4

*Catholic High Sch. Ass'n of Archdiocese of N.Y. v. Culvert*,
753 F.2d 1161 (2d Cir. 1985)....................4

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
364 F. Supp. 3d 253 (S.D.N.Y. 2019)....................3

*H.K. Porter Co. v. NLRB*,
397 U.S. 99 (1970)....................4

*Hartford Roman Cath. Diocesan Corp. v. Interstate Fire & Cas. Co.*,
905 F.3d 84 (2d Cir. 2018)....................5

*Jeffery v. City of New York*,
113 F.4th 176 (2d Cir. 2024)....................3

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
52 N.Y.2d 105 (1981)....................6

*Marksmen, Inc. v. Interbrand Corp.*,
2010 WL 2595103 (S.D.N.Y. 2010)....................4

*NCAA v. Alston*, 594 U.S. 69 (2021)....................4

*New York Dist. Council No. 9, Int'l Brotherhood of Painters & Allied Trades, AFL-CIO v. NLRB*,
453 F.2d 783 (2d Cir. 1971)....................4

*Stone Key Partners LLC v. Monster Worldwide, Inc.*,
333 F. Supp. 3d 316 (S.D.N.Y. 2018), *aff'd*, 788 F. App'x 50 (2d Cir. 2019)..........................6

*Town of Concord v. Boston Edison Co.*,
915 F.2d 17 (1st Cir. 1990) (Breyer, J.).......................................................................4

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) (Scalia, J.)...................................................................................4

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015)...........................................................................3

**Statutes**

17 U.S.C. § 201(b) ...........................................................................................................2

29 U.S.C. § 158(d) ...........................................................................................................4

**Other Authorities**

Fed. R. Evid. 201(b)(2) .....................................................................................................3

Warner Records Inc. and Atlantic Recording Corporation (collectively, "Warner")[1] respectfully move to dismiss the First Amended Complaint (the "FAC", ECF 28) of plaintiff American Federation of Musicians of the United States and Canada ("AFM").[2] The core analysis applicable to the Sound Recording Labor Agreement (the "SRLA", ECF 33-2) set forth in defendant Universal Music Group, Inc.'s ("UMG's") separately filed Motion to Dismiss applies equally to and is similarly dispositive of AFM's claim against Warner. Therefore, to avoid unnecessary duplicative briefing, Warner joins and adopts UMG's arguments and writes separately to highlight the additional points below.

## I. THERE IS NO AFM AGREEMENT THAT APPLIES TO AI USE OF SOUND RECORDINGS.

AFM sues for breach of the SRLA, claiming entitlement to an unspecified share of revenues received by Warner for its licensing of sound recordings to Udio and Suno for "the development, training, refinement, deployment, and commercial exploitation of generative artificial intelligence systems, including successor models and derivative technologies…." FAC ¶ 57 (the "AI Use"). It is, however, undisputed by AFM that the "use of sound recordings in generative AI software models is not a purpose covered by the SRLA." FAC ¶ 45; *see also* Transcript of July 21, 2026 Pre-Motion Conference Hearing, ECF 33-3 at 4:10-18, 5:19-20. AFM further concedes that there is no other applicable AFM agreement (with Warner or anyone else) covering such "AI Use." *See* ECF 33-3 at 7:11-18 ("There is no underlying agreement for AI use. We conceded that. There is no agreement that applies directly to AI….").

---

[1] Because AFM requested a summons only for Atlantic Records Corp., Warner Records Inc. is not listed on the Court's docket or the ECF system. *See* ECF 29-30. Nonetheless, Warner Records, Inc. appears with Atlantic Records Corp. and moves to dismiss the First Amended Complaint.

[2] Unless otherwise specified, all emphasis added, initial capitalizations conformed without brackets, and internal citations and quotation marks are omitted.

These two concessions are dispositive. AFM admits that there is no direct agreement with Warner requiring any payment for AI Use, and that there is no separate AFM agreement that could possibly establish a payment rate or mechanism for such AI Use under Article 21(a) of the SRLA.

## II. NOTHING IN THE SRLA CREATES A RIGHT TO PAYMENT FOR AI USE.

The SRLA explicitly states that Warner is "deemed the author and/or exclusive owner of all the rights comprised in the copyright," including "the right to exploit any or all of the [copyrights] in any and all media, whether now known or hereafter invented, as the [record label] determines." ECF 33-2 § 26; *see also* 17 U.S.C. § 201(b). Therefore, any possible right to payment for AFM-represented musicians is entirely a creature of contract. The SRLA, however, does not provide payment terms for every conceivable use of sound recordings. *See AFM v. Atl. Recording Corp.*, 203 F. Supp. 3d 301, 303 (S.D.N.Y. 2016) ("SRLA is a collectively bargained agreement that requires the signatory record companies to share with musicians represented by AFM a designated portion of ***certain*** revenues earned from the various commercial exploitations of sound recordings made by those musicians.").

Nothing in the SRLA, including Article 21(a)—the only contractual term that AFM relies on—creates an independent right to compensation for AI Use. Rather, it ties any payment obligation to "the AFM agreement that would then be effective" for the medium for which the license is made (*e.g.*, AFM's agreement with film and television producers) to supply the rate. If, as here, no such AFM agreement exists providing payment terms for a particular use, Article 21(a) is inapplicable. Given that neither the SRLA nor any other AFM agreement establishes compensation for AI Use, there is no agreement capable of being breached, and AFM's claim for breach of contract fails as a matter of law.

## III. THE PARTIES ARE CURRENTLY NEGOTIATING WHETHER AND HOW THE SRLA SHOULD ADDRESS AI USE.

The SRLA is subject to regular negotiation upon expiration (*see* ECF 33-2 § 29), and such prior negotiations have resulted in the current terms addressing a variety of mediums and uses that have developed over the years. *See AFM v. Atl. Recording Corp.*, 203 F. Supp. 3d at 303 ("as digital forms of sound recordings became possible, … AFM began negotiating new agreements … to account for the potential new sources of revenue…."). For example, when sound recordings started being used in video games AFM negotiated with the record labels for the right to receive compensation from those revenue streams. In the absence of such language in the SRLA, the parties are, right now, at the bargaining table negotiating whether and how AI Use of sound recordings should be compensated under a renewed SRLA. ECF 33-3 at 14:25-15:4 ("The Collective Bargaining Agreement is being negotiated as a whole ***right now***…. We are just engaged in normal collective bargaining….").[3]

AFM asks the Court in this case to end-run the parties' collective bargaining and create new contractual rights governing the use of sound recordings on AI platforms. AFM's attempt to

---

[3] *See also, e.g.*, Mikael Elsila, Musicians Take on A.I., Allegro, Apr. 2026, https://www.local802afm.org/allegro/articles/srla-rally-march-2026/ ("'If A.I. learns, we should earn!' That was the battle cry … as the AFM began the latest round of negotiations for … the Sound Recording Labor Agreement."); AFM Rally for AI Protections & Fair Pay, Am. Fed'n of Musicians (Mar. 6, 2026) https://www.afm.org/2026/03/afm-rally-for-ai-protections-fair-pay/ (listing one of AFM's "two priorities for these negotiations [as] Securing 'Consent, Compensation, and Credit' regarding the use of musicians' work in machine learning and generative AI."); Tino Gagliardi, Coalition and Contracts: AFM Works to Combat AI and Protect Musicians, Int'l Musician (Dec. 1, 2025), https://internationalmusician.org/coalition-and-contracts-afm-works-to-combat-ai-and-protect-musicians/ ("One centerpiece of the SRLA negotiations will be consent, compensation, and credit for the use of musicians' tracks in machine learning.").

The Court may take judicial notice of AFM's public statements on its website and in interviews. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (taking judicial notice of "information publicly announced on a party's website"); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 264 (S.D.N.Y. 2019) (Ramos, J.) (taking judicial notice *sua sponte* of "the contents of the full interview" because "what statements [the speaker] made therein 'can be accurately and readily determined from' the video footage of the interview") (quoting Fed. R. Evid. 201(b)(2)) *aff'd*, 788 F. App'x. 85 (2d Cir. 2019); *Jeffery v. City of New York*, 113 F.4th 176, 198 (2d Cir. 2024) (taking judicial notice of media reports "insofar as they detail widely documented events that plaintiffs themselves reference or generally acknowledge in their pleadings….").

usurp that bargaining process should be rejected. *Marksmen, Inc. v. Interbrand Corp.*, 2010 WL 2595103, at *3 (S.D.N.Y. 2010) ("[c]ourts do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there.").[4]

It is explicit under federal law that courts do not rewrite contracts. The National Labor Relations Act (NLRA) requires employers and labor organizations to bargain collectively over wages, hours, and other terms and conditions of employment, and it expressly states that the law "does not compel either party to agree to a proposal or require the making of a concession." 29 U.S.C. § 158(d). Courts thus may not "compel concessions or otherwise sit in judgment upon the substantive terms of collective-bargaining agreements." *See H.K. Porter Co. v. NLRB*, 397 U.S. 99, 108 (1970); *see also id.* at 103 ("Congress did not contemplate that the [National Labor Relations] Board should have power to compel agreement when the parties themselves are unable to agree.").[5] AFM's desired amendment to a collective bargaining agreement can be achieved "only through the process of collective bargaining." *Council No. 9*, 453 F.2d at 787-88.

---

[4] *See also, e.g., NCAA v. Alston*, 594 U.S. 69, 102 (2021) (Gorsuch, J.) ("Judges must be wary … of the temptation to specify 'the proper price, quantity, and other terms of dealing'…."); *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, L*LP, 540 U.S. 398, 408 (2004) (Scalia, J.) (courts should not "act as central planners, identifying the proper price, quantity, and other terms of dealing – a role for which they are ill suited"); *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., In*c., 784 F.2d 1325, 1340 (7th Cir. 1986) (Easterbrook, J.) (parties "may drive hard bargains, [but] this does not imply that district courts should become little versions of the Office of Price Administration…."); *Town of Concord v. Boston Edison C*o., 915 F.2d 17, 25 (1st Cir. 1990) (Breyer, J.) ("How can the court determine this price without examining costs and demands, indeed without acting like a rate-setting regulatory agency, the rate-setting proceedings of which often last for several years?").

[5] *See also, e.g.*, *New York Dist. Council No. 9, Int'l Brotherhood of Painters & Allied Trades, AFL-CIO v. NLRB*, 453 F.2d 783, 787-88 (2d Cir. 1971) ("the National Labor Relations Act does not grant to the Board or to the courts the power to impose substantive contract terms upon the parties to a collective bargaining agreement"); *Catholic High Sch. Ass'n of Archdiocese of N.Y. v. Culvert*, 753 F.2d 1161, 1167 (2d Cir. 1985) ("the government cannot compel the parties to agree on specific terms"); *Bartenders & Culinary Workers Union, Local 340 v. Howard Johnson Co.*, 535 F.2d 1160, 1162 (9th Cir. 1976) ("courts and secondary authorities alike are virtually unanimous in the view that a court may not impose the substantive provisions of a collective bargaining contract."); *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1336 (S.D.N.Y. 1982) (courts' authority "does not encompass the right to make an agreement for the parties.").

## IV. THERE IS NO REQUIREMENT IN THE SRLA FOR DEFENDANTS TO PROVIDE INFORMATION TO AFM ABOUT USES OUTSIDE OF THE SRLA.

AFM also claims that Warner breached the SRLA by failing to provide details of its licensing agreements with Suno and Udio. FAC ¶ 56. There is no such requirement in the SRLA. The SRLA requires information sharing only "in order to effect *such* a 'new use'"; that is, a use for which there is an "AFM agreement that would then be effective" and provides payment terms, "including, without limitation, pension contributions…." ECF 33-2 § 21(a) (emphasis added). The word "such" refers to the prior paragraph specifying uses subject to a separate AFM agreement. *See, e.g.*, *Hartford Roman Cath. Diocesan Corp. v. Interstate Fire & Cas. Co.*, 905 F.3d 84, 89 (2d Cir. 2018) ("we read 'such' as a term of limitation that references what has been previously specified"); *Am. Smelting & Refining Co. v. Stettenheim*, 177 A.D. 392, 396 (App. Div. 1917) ("The word 'such,' when used in a contract or statute, must, in order to be intelligible, refer to some antecedent…."). Since AI Use is not subject to any AFM agreement, there is no obligation to provide AFM with any details of Warner's business arrangements relating to it.

## V. AFM'S ARGUMENTS ARE WITHOUT MERIT.

AFM makes two attempts to plead around the lack of an applicable agreement. *First*, AFM argues that Article 21(a) of the SRLA is ambiguous, contending that the words "shall pay" create a freestanding obligation to pay for any new use, with the reference to other AFM agreements only setting the amount. ECF 25 at 2. That argument disregards the rest of the sentence. "Shall pay" raises the critical and determinative question of what exactly shall be paid. The sentence's second half provides the answer: "an amount equal to all payments … that would be required under the AFM agreement that would then be effective." If there is no such other AFM agreement providing a payment structure—as AFM concedes—then there is no enforceable obligation. A promise to

pay an unspecified amount for an unspecified use, with no methodology or external standard, is unenforceable.

Even if, as AFM contends, the words "shall pay" in Article 21 were a standalone clause without reference to other contracts (it is not), it would be unenforceable. "It is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable. This is especially true of the amount to be paid…." *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109-10 (1981); *Stone Key Partners LLC v. Monster Worldwide, Inc.*, 333 F. Supp. 3d 316, 334–35 (S.D.N.Y. 2018), *aff'd*, 788 F. App'x 50 (2d Cir. 2019) (holding a "fee provision" unenforceable because it contained "no methodology, formula, or external measure by which the Court might objectively determine the compensation to be paid").

Enforceability aside, AFM's position, taken to its logical conclusion, requires dismissal. If Article 21(a) creates an independent payment obligation, AFM concedes the amount is calculated only by reference to other AFM agreements. As there is no other agreement, the amount must be zero, and the Complaint must be dismissed.

*Second*, AFM speculates that some hypothetical, unpled downstream use of an AI-generated track—for example, a user-created output later used in a television commercial—might one day intersect with an SRLA-covered use. *See* ECF 25 at 2-3 (hypothesizing a "user-created, AI-generated track marketed on streaming platforms like Spotify"); *see also* ECF 33-3 at 6:1-17 (admitting the scenario "is a ***hypothetical completely***"). Any such future hypothetical uses are just that: speculative and unalleged. Moreover, the SRLA does not reach recordings created by an AI platform in response to a user prompt, because, by definition, no AFM-represented musician performed on such a recording, and neither the platform nor the user is an SRLA signatory. AFM

identifies no provision of the SRLA requiring compensation for sound recordings generated by artificial intelligence rather than by AFM musicians.

## VI. THE FAC SHOULD BE DISMISSED WITH PREJUDICE.

For the foregoing reasons, and those stated in UMG's Motion, Warner respectfully requests that the Court dismiss the FAC with prejudice. Given the absence of any contract covering AI Use, AFM's claims cannot be cured. No amendment can create a contract the parties never made. *See AFM v. Atl. Recording Corp.*, 203 F. Supp. 3d 301, 310–11 (S.D.N.Y. 2016) (dismissing with prejudice where an unambiguous agreement did not impose the claimed obligation).

Dated: August 14, 2026

Respectfully submitted,

*/s/ David A. Munkittrick*

David A. Munkittrick
Michael J. Lebowich
Nicole Sockett
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
T: (212) 969-3000
dmunkittrick@proskauer.com
mlebowich@proskauer.com
nsockett@proskauer.com

*Attorneys for Warner Records Inc. and Atlantic Recording Corporation*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(c) of the United States District Court for the Southern District of New York, I hereby certify that this brief contains 2,369 words. In making this certification, I have relied on the word count feature of Microsoft Word, the computer program that I used to prepare this brief.

Dated: August 14, 2026

/s/ *David A. Munkittrick*
David A. Munkittrick